J-S18015-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ARDEN C. OLDT, III, | |
| Appellant | No. 871 EDA 2014 |

Appeal from the Judgment of Sentence Entered October 21, 2013
In the Court of Common Pleas of Carbon County
Criminal Division at No(s): CP-13-CR-0001025-2012

BEFORE:  BENDER, P.J.E., ALLEN, J., and MUNDY, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JUNE 02, 2015**

Appellant, Arden C. Oldt, III, appeals from the judgment of sentence of 48 hours' to six (6) months' imprisonment, imposed after he was convicted of driving under the influence of alcohol incapable of safe driving and reckless driving.  Appellant challenges the sufficiency of the evidence to sustain his convictions and alleges the verdict is against the weight of the evidence.  After careful review, we affirm.

Appellant's convictions stem from an incident on August 2, 2012, where Appellant caused a three-car accident on State Route 248 in Carbon County, Pennsylvania.  Appellant was arrested for suspicion of drunk driving and was ultimately found guilty of the following charges at a non-jury trial held on August 9, 2013:  driving under the influence of alcohol incapable of

safe driving,[1] and reckless driving.[2]  The court sentenced Appellant to 48 hours' to six (6) months' incarceration.  Following the denial of his post-sentence motions, Appellant filed a notice of appeal.

Subsequently, the court issued an order dated March 10, 2014, in conformance with Pa.R.A.P. 1925(b)(3), directing Appellant to:

> within twenty-one (21) days from the date of this Order's entry on the docket, to file of record and serve upon the undersigned, a Concise Statement of the Matters Complained of in the appeal to the Superior Court pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).  Any issue not properly included in the Concise Statement shall be deemed waived.

Order of Court, 3/10/14.  Accordingly, the deadline for filing a concise statement was March 31, 2014.[3]  Appellant's 1925(b) statement was not served on the court or docketed until April 2, 2014.[4]  The trial court found

---

[1] 75 Pa.C.S. § 3802(a)(1).

[2] 75 Pa.C.S. § 3736(a).

[3] "When any period of time is referred to in any statute, such period in all cases … shall be so computed as to exclude the first and include the last day of such period."  1 Pa.C.S. §1908.  Accordingly, we will exclude March 10, 2014, the entry date of the order directing the concise statement, from our computation of the relevant filing deadline and begin counting from March 11, 2014.  We calculate that the twenty-first day after the entry of the trial court's order was March 31, 2014, which did not fall on a Saturday or Sunday, or on a legal holiday.

[4] Appellant did file a certificate of service dated March 30, 2014, claiming that the 1925(b) statement was mailed to all relevant parties by first class mail.  Trial Court Opinion (TCO), 4/30/14, at 13.  However, Appellant failed to provide the court with any evidence as per Rule 1925(b)(1) as verification of the mailing date.  Furthermore, the court notes that Appellant's cover letter attached to the 1925(b) statement, indicating that the original concise
*(Footnote Continued Next Page)*

that Appellant failed to timely file his concise statement of errors in compliance with the 1925(b) order. TCO, at 11. We agree. However, "if there has been an untimely filing, this Court may decide the appeal on the merits if the trial court had adequate opportunity to prepare an opinion addressing the issues being raised on appeal." *Commonwealth v. Burton*, 973 A.2d 428, 433 (Pa. Super. 2009). Here, the trial court has addressed the issues at length in its 1925(a) opinion. Therefore, we will overlook the untimeliness of Appellant's concise statement and address the merits of the issues contained therein.

Appellant presents the following two questions for our review:

I. Was the admissible evidence presented sufficient to convict beyond a reasonable doubt for the offenses of reckless driving and driving under the influence of alcohol to such a degree that [Appellant] was rendered incapable of safe driving?

II. Was the verdict of the trial court that the [Appellant] was recklessly driving and under the influence of alcohol to such a degree that it rendered him incapable of safe driving against the weight of the evidence?

Appellant's Amended Brief, at 4.

Before addressing Appellant's sufficiency and weight of the evidence claims, we review the facts of the incident which led to Appellant's

---

*(Footnote Continued)*

statement is enclosed, is dated April 1, 2014, which conflicts with the date on the certificate of mailing. TCO, at 14.

convictions, as summarized by the trial court in the following portion of its Rule 1925(a) opinion:

[O]n August 2, 2012, [Appellant] was driving erratically on State Route 248 in Carbon County, Pennsylvania. [Appellant]'s driving caused a three-car accident involving himself, Gary Dimovitz (hereinafter "Dimovitz"), and Larry Mosser (hereinafter "Mosser"). After investigating the accident, the officer called to the scene, Officer Robert Cohowicz, arrested [Appellant] for suspicion of drunk driving after: 1) he detected an odor of alcohol emanating from [Appellant]; 2) [Appellant] readily admitted that he drank three beers the day of the accident, including one beer a mere one hour before; and 3) [Appellant] failed a standardized field sobriety test.

At trial, both Dimovitz and Mosser offered similar accounts of the accident. Dimovitz testified that on the day of the accident he was driving a silver BMW westbound on State Route 248. Construction on Route 248 caused the right-hand lane of the highway to be closed; all traffic had to proceed in the left-hand lane. To close the right lane, a construction crew had tapered off cones to prevent a driver from entering the right-hand lane. These cones then continued down the highway, partitioning the two westbound lanes. This closed right-hand lane caused traffic to move slowly through the construction zone.

While proceeding through the construction zone, Dimovitz observed … [Appellant] driving a black Mercedes convertible directly in front of him. About halfway through the construction zone, Dimovitz observed [Appellant] drive through the construction cones into the closed right-hand lane. According to Dimovitz, [Appellant] was able to navigate through the cones and proceed down the right-hand lane because, at [Appellant]'s point of entry into the right-hand lane, all construction workers and vehicles were behind him. Once in the right-hand lane, [Appellant] accelerated in an attempt to pass the line of cars slowly traveling through the construction zone in the left-hand lane.

Unlike the beginning of the construction zone where the entrance was tapered off, the end of the construction zone was not tapered off with cones. Thus, as vehicles started to exit the construction zone they were able to merge back into the right-

hand lane. When [Appellant] reached the end of the construction zone, he was forced to apply his brakes as other vehicles were merging into the right-hand lane and preventing … [Appellant] from exiting that lane. Observing [Appellant] apply his brakes, Dimovitz assumed [Appellant] wanted to merge back into the left-hand lane to pass the line of traffic. Consequently, Dimovitz slowed his vehicle, allowing [Appellant] to cross back into the left-hand lane. Once Appellant re-entered the left-hand lane, he was faced with clear and open road ahead of him, but [Appellant] traveld slowly as if he was still in the construction zone. Dimovitz then observed [Appellant] stick his hand out the window, wave, and accelerate ahead.

Up ahead, about one-half mile past the construction zone, Dimovitz noticed [Appellant's] brake lights as … [Appellant] moved back into the right-hand lane. Since [Appellant] was approaching the Palmerton exit on Route 248, Dimovitz assumed that [Appellant] was about to exit the hightway. However, his assumption was incorrect because after Dimovitz passed the exit … [he] now noticed, in his rearview mirror, that [Appellant] was back in the left-hand lane some distance behind him.

As Dimovitz continued past the traffic in the right-hand lane, he took another quick glance into his rearview mirror and noticed that [Appellant] had closed the gap between them.

Shortly thereafter, as Dimovitz passed the last car in the right-hand lane, [Appellant's] vehicle struck Dimovitz's vehicle. The impact caused Dimovitz to slightly lose control of his vehicle, but he was quickly able to regain control. Thereafter, Dimovitz looked into his rearview mirror and noticed that [Appellant's] vehicle had collided with the median. … Dimovitz pulled over onto the right-hand shoulder and called 911.

Like Dimovitz, Mosser testified that on August 2, 2012, he was also traveling westbound on Route 248. While traveling down the highway, Mosser noticed in his rearview mirror two vehicles approaching him from behind.[7] As these vehicles approached him, Mosser described [Appellant] as driving as if Mosser was not even on the road. Conversely, Mosser did not perceive the other vehicle, driven by Dimovitz, as a threat to him.

[7]Mosser stated that despite setting his cruise control to sixty-two (62) miles per hour in a fifty-five (55)

- 5 -

mile per hour zone, both vehicles were rapidly drawing near him.

Accordingly, Mosser, who was already in the right-hand lane, slowed his vehicle and moved onto the shoulder of the highway in an attempt to allow both vehicles to pass him; however, he was not able to get completely off the road due to a guide rail. As [Appellant] approached Mosser, his vehicle began to swerve. When [Appellant] attempted to pass Mosser, Appellant's vehicle struck the left rear panel of Mosser's vehicle. Upon collision, [Appellant's] vehicle veered hard to the right, struck the guide rail which then caused [Appellant's] vehicle to travel back across the two lane highway and into the median separating the westbound lanes from the eastbound lanes.

Once his vehicle was at rest, Mosser approached [Appellant] to inquire into whether or not he was injured. [Appellant] stated that he was fine; he then apologized for causing the accident.

Responding to Dimovitz's 911 phone call, Officer Cohowicz, of the Palmerton Borough Police Department arrived at the accident scene. Upon arrival, Officer Cohowicz observed that just past Mosser's vehicle were skid marks on the road leading up to [Appellant]'s vehicle that was resting against the median.

TCO, at 1-6. (citations and some footnotes omitted).

Appellant first argues that the evidence presented at trial was insufficient to sustain his convictions. To begin, we note our standard of review:

In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. *Commonwealth v. Moreno*, 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. *Commonwealth v. Hartzell*, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyong a reasonable doubt. *Morena, supra* at 136.

*Commonwealth v. Koch*, 39 A.3d 966, 1001 (Pa. Super. 2011).

Specifically, Appellant challenges the sufficiency of the evidence to support his conviction under 75 Pa.C.S. § 3802(a)(1), which states: "An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." In order to sustain a conviction under subsection 3802(a)(1), "the Commonwealth must prove: (1) that [Appellant] was operating a motor vehicle, (2) after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving." *Commonwealth v. Kerry*, 906 A.2d 1237, 1241 (Pa. Super. 2006). Appellant does not contest that he was driving the vehicle that caused the accident.[5] However, Appellant contends that the Commonwealth failed to establish that his ingestion of alcohol rendered him incapable of safely driving. Appellant's Amended Brief, at 12. To the contrary, Appellant asserts that the accident was not directly attributable to any alcohol consumption on his part. *Id.*

In *Kerry*, we held:

_____

[5] "In response to Officer Cohowicz's questions about the accident, Appellant stated that he was the driver of the black Mercedes convertible." TCO, at 7. Appellant also apologized to Mosser for causing the accident immediately following the incident. TCO, at 6.

[t]o establish that one is incapable of safe driving … the Commonwealth must prove that alcohol has substantially impaired the normal mental and physical faculties required to operate the vehicle safely; "substantial impairment" means a diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions.

*Id.* at 1241 (quoting ***Commonwealth v. Gruff***, 822 A.2d 773, 781 (Pa. Super. 2003)). "[The] meaning [of substantial impairment] is not limited to some extreme condition of disability." ***Id.*** (quoting ***Commonwealth v. Griscavage***, 517 A.2d 1256, 1258 (Pa. 1986)). In ***Commonwealth v. Segida***, 985 A.2d 871 (Pa. 2009), our Supreme Court determined:

[t]he types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech.

*Id.* at 879. The Court further declared, "[t]he weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony." ***Id.***

Here, Appellant admitted to consuming three twelve-ounce cans of beer prior to the incident, with the last beer being consumed a mere hour before the accident.[6] TCO, at 8. Officer Cohowicz testified that Appellant's

_____

[6] The trial court found Appellant's testimony regarding his consumption of alcohol to be contradictory, as he testified that he consumed the three beers over a four hour period of time; however, Michelle Everett, the female

*(Footnote Continued Next Page)*

eyes were glossy and bloodshot and that he detected an odor of alcohol emanating from Appellant. TCO, at 7. Based on Appellant's admission regarding the consumption of alcohol, Officer Cohowicz asked Appellant to submit to a standardized field sobriety test. Appellant agreed to the test. However, during the second phase of a three-phase test, "Officer Cohowicz stopped Appellant due to his lack of coordination as the Officer had to catch [Appellant] in order to prevent him from falling to the ground." TCO, at 8. Appellant's physical appearance and inability to pass the field sobriety test, combined with the testimony of Dimovitz and Mosser regarding Appellant's erratic driving, not to mention the fact that Appellant clearly demonstrated a diminution in his ability to exercise judgment when he ignored the cones and drove in the prohibited right-hand lane of a construction zone, all support the trial court's finding that Appellant was driving under the influence of alcohol to such a degree that it rendered him incapable of safe driving.

Appellant also challenges the sufficiency of the evidence to support his conviction of reckless driving under 75 Pa.C.S. § 3736, which provides that "[a]ny person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving." Thus, to sustain a conviction of reckless driving, the Commonwealth must prove, "two

_(Footnote Continued)_ ───────────

passenger in Appellant's car who had accompanied him to the bar on the day of the incident, testified that they did not arrive at the bar until after three o'clock in the afternoon and the accident occurred sometime before five o'clock. TCO, at 25.

elements: an *actus reus* – driving a vehicle; and a *mens rea* – "in willful or wanton disregard for the safety of persons or property." ***Commonwealth v. Bullick***, 830 A.2d 998, 1001 (Pa. Super. 2003). Appellant argues that his ingestion of alcohol is not *per se* recklessness and that the Commonwealth failed to establish the *mens rea* required for this offense. Appellant's Amended Brief, at 15-16.

We have held that "driving under the influence of intoxicating substances does not create legal recklessness *per se* but must be accompanied with other tangible indicia of unsafe driving to a degree that creates a substantial risk of injury which is consciously disregarded." ***Commonwealth v. Mastromatteo***, 719 A.2d 1081, 1083 (Pa. Super. 1998). After analyzing the history of the offense of reckless driving in ***Bullick***, we concluded that:

> the *mens rea* necessary to support the offense of reckless driving is a requirement that Appellant drove in such a manner that there existed a substantial risk that injury would result from his driving, i.e., a high probability that a motor vehicle accident would result from driving in that manner, that he was aware of that risk and yet continued to drive in such a manner, in essence callously disregarding the risk he was creating by his own reckless driving.

***Bullick***, 830 A.2d at 1003.

At the non-jury trial, the Commonwealth presented eyewitness testimony from Dimovitz and Mosser, who observed Appellant disregard the construction cones and travel in the prohibited right-hand lane. TCO, at 27-28. "Once in the prohibited right-hand lane, Dimovitz saw [Appellant] travel

at an accelerated rate of speed in an attempt to pass the line of traffic traveling in the proper left-hand lane, *despite this area being an active construction work zone*." *Id.* at 28. (emphasis added). Appellant ultimately lost control of his vehicle and struck both Dimovitz's and Mosser's vehicles before colliding with the guide rail. *Id.* Appellant should have known that a high probability of causing an accident existed as a result of driving in such a manner.

These facts are analogous to the facts in *Commonwealth v. Jeter*, 937 A.2d 466 (Pa. Super. 2007), where we upheld a reckless driving conviction based on the following tangible indicia of unsafe driving: 1) the defendant was traveling on the Pennsylvania turnpike, presumably at an increased speed; 2) an eyewitness observed the defendant weaving in and out of the roadway for several miles before losing control and crashing into the center barrier; 3) the defendant's blood alcohol level was 0.21 within two hours of his operation of the vehicle; and 4) the officer on the scene found a half-empty bottle of liquor on the front passenger-side floor of the defendant's vehicle. While there was no valid blood alcohol test results in the case presently before this Court, Officer Cohowicz concluded based on his knowledge, experience, training, and his observations of Appellant, that Appellant had been driving under the influence of alcohol. TCO, at 28-29. Furthermore, Appellant admitted to consuming alcohol a mere hour before the accident. TCO, at 8. Based on the evidence presented, the trial court was reasonable in its finding of reckless driving.

Appellant next challenges the weight of the evidence to support his convictions.

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Houser*, 18 A.3d 1128, 1135-36 (Pa. 2011) (citations and internal quotation marks omitted).

Appellant bases his weight of the evidence claim on his assertion that the trial court "gave short shrift" to the testimony of Michelle Everett. Appellant's Amended Brief, at 17. However, the trial court considered Ms. Everett's testimony presented at trial and found her testimony to be not credible. TCO, at 30. "[O]n issues of credibility and weight of the evidence, an appellate court defers to the findings of the trial judge, who has had the opportunity to observe the proceedings and demeanor of the witnesses." *Commonwealth v. Cunningham*, 805 A.2d 566, 572 (Pa. Super. 2002). The trial court, as fact finder, concluded that the elements of driving under the influence of alcohol incapable of safe driving and reckless driving were

- 12 -

proven beyond a reasonable doubt. We ascertain no abuse of discretion in the trial court's denial of Appellant's challenge to the weight of the evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/2/2015