J-S33035-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JOHNNY LEE NELSON | |
| Appellant | No. 1624 WDA 2015 |

Appeal from the Judgment of Sentence July 8, 2015
In the Court of Common Pleas of Crawford County
Criminal Division at No(s): CP-20-CR-0000634-2014

BEFORE:  GANTMAN, P.J., OLSON, J., and FITZGERALD, J.*

MEMORANDUM BY GANTMAN, P.J.:                    **FILED JUNE 22, 2016**

Appellant, Johnny Lee Nelson, appeals from the judgment of sentence entered in the Crawford County Court of Common Pleas, following a bifurcated bench/jury trial after which Appellant was convicted of one count of driving under the influence of alcohol or controlled substance ("DUI") (general impairment), one count of DUI highest rate of alcohol, and driving while operating privilege is suspended or revoked.[1]  We affirm.

The trial court opinion sets forth the relevant facts of this case as follows:

> Trooper Timothy Dilijonas testified that at approximately 2:15 a.m. while he and another Trooper were on routine

---

[1] 75 Pa.C.S.A. §§ 3802(a)(1), 3802(c), and 1543(a), respectively.

---

*Former Justice specially assigned to the Superior Court.

patrol they were traveling north on State Rt. 6 and 19 near Saegertown. He indicated that the Troopers were following a blue Chevy Blazer with a registration plate "JUNKIN" traveling north in front of them.

He stated that he observed that vehicle make a right hand turn into the Owl's Nest parking lot and park with the headlights facing south right up against that building.

Ashley Kirkland, a bartender in the Owl's Nest, testified that [Appellant] came into the bar after 2:00 a.m. and wanted either an alcoholic beverage or non-alcoholic beverage but she told him she could not serve him because it was after 2:00 a.m. She indicated that he was a bit upset which concerned her and that she looked out the window after he left and she testified to the following:

> I called the police because I looked out the window and I saw a vehicle and I could see the tail lights, [they] were going on and off like as if somebody had never driven before, brakes go on brakes go off, lights flickering on or off, somebody got out of the driver's side, went to the passenger side and I only saw one person.

She went on to indicate that after the police arrived she went outside and the person who exited that vehicle was the same person who had been in the Owl's Nest shortly after 2:00 a.m. and was [Appellant].

Trooper Dilijonas testified that he received a dispatch apparently based on the call Ashley Kirkland made at approximately 2:30 a.m. and he arrived at the Owl's Nest at approximately 2:37 a.m.

He testified that at this time he noticed the same Chevy Blazer but it was now facing north on the north side of the parking lot so that it looked like it had backed up and turned around so the headlights were now facing north.

He stated that he noticed someone in the front passenger side who was ultimately identified as [Appellant] and who was the only one who exited the vehicle.

He further testified that [Appellant] told him that he drove the Blazer from the south side where it had been parked up against the building to the other side of the parking lot.

\* \* \*

In considering whether the conclusion that [Appellant] was driving the vehicle was against the weight of the evidence, we note that [Appellant] presented the testimony of Shannon Muddiman who essentially indicated that she left [Appellant] with his keys in the Owl's Nest parking lot, apparently after he had gone into the Owl's Nest and the bartender refused to serve him soda. She indicated that she did not know what happened after she left the parking lot in her own vehicle.

[Appellant] also presented the testimony of Jessica Yonkin who indicated that when she retrieved the Blazer at the Owl's Nest in Saegertown the morning following [Appellant's] arrest, the driver's seat had been moved close to the steering wheel to the point she could not drive the vehicle and to the point [Appellant] would not have been able to do so either.

Finally, [Appellant] himself testified that after he had been drinking it was Ms. Muddiman and not himself that drove the vehicle. He further indicated that he would not have told Trooper Dilijonas that he was driving the vehicle in the parking lot but he was apparently so under the influence that he may have misunderstood the question and he did not want to call Trooper Dilijonas a liar.

(Trial Court Opinion, filed September 15, 2015, at 2-3) (internal citation to record omitted). The jury found Appellant guilty of the DUI offenses, and the court convicted Appellant of driving with a suspended license. The court sentenced Appellant on July 8, 2015, to pay costs, a fine of $1,500, and intermediate punishment of sixty (60) months. Appellant's intermediate punishment sentence required him to serve seven (7) months' of

- 3 -

incarceration with work release privileges, followed by four (4) months of on-radio frequency with SCRAM, three (3) months of on-radio frequency without SCRAM, one (1) month of intensive intermediate punishment supervision and regular intermediate punishment supervision.[2]   Appellant timely filed a post-sentence motion on July 17, 2015, challenging the sufficiency and weight of the evidence to support his convictions, which the court denied on September 15, 2015.   Appellant timely filed a notice of appeal on October 14, 2015.   On October 15, 2015, the court ordered Appellant to file a concise statement of errors complained of on appeal, per Pa.R.A.P. 1925(b), and Appellant timely complied on November 4, 2015.

Appellant raises two issues on appeal:

> WHETHER THERE WAS SUFFICIENT EVIDENCE TO SUPPORT VERDICTS OF GUILTY WITH RESPECT TO DRIVING UNDER THE INFLUENCE AS TO THE ESSENTIAL ELEMENT OF THESE OFFENSES WITH RESPECT TO [APPELLANT] BEING IN OPERATION OR IN PHYSICAL CONTROL OF A MOTOR VEHICLE AT THE RELEVANT TIME PERIOD.
>
> WHETHER OR NOT THE VERDICTS WITH RESPECT TO

---

[2] We observe the trial court sentenced Appellant pursuant to 75 Pa.C.S.A § 3803(a), (b)(4).   We are also mindful of **Commonwealth v. Grow**, 122 A.3d 425 (Pa Super. 2015), and **Commonwealth v. Musau**, 69 A.3d 754 (Pa. Super. 2013) (interpreting prefatory language found in prior version of 75 Pa.C.S.A § 3803(a) to limit maximum sentence for first or second DUI conviction to six (6) months' imprisonment).   **Grow** and **Musau**, however, do not apply in this case or affect Appellant's sentence because Appellant violated Section 3802(c) and had a prior offense, so his DUI was properly graded as a first degree misdemeanor, with a maximum sentence of five (5) years.   **See** 18 Pa.C.S.A. § 106(b)(6) and 75 Pa.C.S.A. § 3803(b)(4).

DRIVING UNDER THE INFLUENCE WERE AGAINST THE
WEIGHT OF THE EVIDENCE AS TO [APPELLANT'S] BEING
IN OPERATION OR IN PHYSICAL CONTROL OF A MOTOR
VEHICLE AT THE RELEVANT TIME PERIOD.

(Appellant's Brief at 4).

For purposes of disposition, we combine Appellant's issues. Initially Appellant argues the Commonwealth presented insufficient evidence to demonstrate that Appellant operated or was in physical control of the vehicle on the night of the incident because neither the bartender nor Trooper Dilijonas personally observed Appellant operating the vehicle. Instead, Appellant contends his witness, Shannon Muddiman, established that she was the sole operator of the vehicle until Appellant's arrest in the Owl's Nest Tavern parking lot. To emphasize this point, Appellant states at the time State Police confronted him, Appellant was in the passenger seat of the vehicle with the keys out of the ignition. Appellant also challenges the weight of the evidence, arguing the Commonwealth's testimony taken as a whole was circumstantial and failed to show that Appellant operated or was in physical control of the vehicle. Appellant concludes this Court must dismiss the convictions for DUI or order a new trial. We disagree.

With respect to Appellant's sufficiency claim:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In

addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005)

(quoting *Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super.

2003)).

Our standard of review for a challenge to the weight of the evidence is

as follows:

The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408

(2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004)

(internal citations omitted).

The DUI statute in relevant part provides:

**§ 3802. Driving under influence of alcohol or controlled substance**

**(a) General impairment.**—

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

\* \* \*

**(c) Highest rate of alcohol.**—An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1), (c). The term "operate" as used in the DUI statute "requires evidence of actual physical control of either the machinery of the motor vehicle or the management of the vehicle's movement, but not evidence that the vehicle was in motion." *Commonwealth v. Johnson*, 833 A.2d 260, 263 (Pa.Super. 2003).

Regarding Appellant's issues, the trial court reasoned as follows:

The circumstantial evidence alone, when looked at in the light most favorable to the verdict winner, was sufficient to establish beyond a reasonable doubt that [Appellant] was driving the vehicle and that is bolstered by his admission that he did so.

* * *

> Obviously, while some of the testimony presented by [Appellant] and his witnesses was contrary to the [Commonwealth's] testimony, as we have indicated, the trier of fact was free to believe which testimony the trier of fact found to be truthful in whole or in part and we cannot find based on all of this evidence that the verdict was so contrary to the evidence to shock our sense of justice.

(Trial Court Opinion at 2-3). The record supports the court's analysis, which we accept. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/22/2016