J-S18026-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JESUS MANUEL MENDEZ COLLADO | : | |
| | : | |
| Appellant | : | No. 1246 MDA 2019 |

Appeal from the Judgment of Sentence Entered February 27, 2019
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s):  CP-40-CR-0000123-2018

BEFORE:   KUNSELMAN, J., KING, J., and STEVENS, P.J.E.*

MEMORANDUM BY KING, J.:                    **FILED JULY 02, 2020**

Appellant, Jesus Manuel Mendez Collado, appeals from the judgment of sentence entered in the Luzerne County Court of Common Pleas, following his bench trial convictions for driving under the influence of alcohol or a controlled substance ("DUI")—general impairment, careless driving, accidents involving damage to unattended vehicle or property, and disorderly conduct.[1]  We affirm.

The relevant facts and procedural history of this case are as follows. During the early morning hours of July 29, 2017, Appellant operated a blue Honda Odyssey minivan, which struck the parked red Chevrolet Aveo of

_____

* Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S.A. §§ 3802(a)(1), 3714(a), and 3745(a), and 18 Pa.C.S.A. § 5503(a), respectively.

Michael Mandak, Sr. ("Victim"). At the time of the motor vehicle collision, Appellant was intoxicated, and Appellant's girlfriend, Celia Delgado, and their son, Omar Collado, were passengers in the minivan. The Commonwealth charged Appellant with DUI—general impairment, careless driving, accidents involving damage to unattended vehicle or property, and disorderly conduct.

Appellant proceeded to a bench trial on December 28, 2018. At trial, the Commonwealth presented the testimony of four witnesses: Victim; Victim's son, Michael Mandak, Jr.; the Mandaks' neighbor and eyewitness to the accident, Jason Hollitt; and Pennsylvania State Police Trooper Jonathan Stemrich, a responding officer.

Victim testified that on the night of July 29, 2017, he was asleep when he heard a loud crash outside at approximately 1:30 a.m. Victim's son retrieved Victim and both went outside approximately one minute later. There, Victim observed significant damage to his Chevy Aveo parked in front of his home. The driver's side rear panel was damaged and two wheels were bent under the vehicle. Victim approached a nearby blue minivan, and saw that the minivan had damage to its front passenger side. Victim observed in the driver's seat of the minivan a male in his thirties or forties whose nationality Victim believed was "Spanish." He also saw a female in the passenger side of the minivan. Victim was not able to identify the male, however, because Victim was not wearing his glasses. Victim testified he heard the female in the minivan tell the male driver to flee. The driver

- 2 -

attempted to drive the vehicle, and almost backed up into Victim before stopping as police arrived. (N.T. Trial, 12/28/18, at 8-14).

Victim's son, Mr. Mandak, Jr., testified that on the night of the collision, a loud crash woke him up around midnight. Victim's son told his parents about the crash and went outside within a minute of hearing the noise. He saw his father's red car had sustained damage to the rear and a back tire. Victim's son observed tire tracks going up the street, where there was a blue Honda minivan with damage to the passenger side. Appellant was in the driver's seat of the minivan. (*Id.* at 15-20).

Next, Mr. Hollitt testified he was outside of his home on the porch at approximately 1:30 a.m. on the morning of the motor vehicle accident. Mr. Hollitt's home is approximately 100 feet from the scene of the crash, and he had a clear view of the crash. He saw a blue Honda Odyssey minivan hit a parked car and continue moving approximately the length of a block. Mr. Hollitt observed Appellant in the driver's seat of the minivan while it was moving. When the vehicle stopped, Appellant exited the driver's seat and a female exited the passenger side of the minivan. In his written statement to police, Mr. Hollitt described the male driver as Hispanic. On cross-examination, Mr. Hollitt explained he does not wear glasses, and that to the extent police noted in a report that he did wear glasses, the report was mistaken. (*Id.* at 21-28).

Trooper Stemrich testified that he responded to the scene of the collision

and observed a red Chevy Aveo with damage to its rear driver's side and tires, and a blue Honda Odyssey with damage to its front end and a tire. The Honda minivan was a block away from the Chevy. Trooper Stemrich encountered Appellant, Ms. Delgado, and their minor son at the scene. Appellant was standing outside the Honda. Appellant admitted he was "extremely intoxicated" and claimed Ms. Delgado had been driving the vehicle. Trooper Stemrich observed Appellant was slurring his speech, very slow, unsure of his footing, and swaying. Appellant also had bloodshot eyes and a strong smell of alcohol on his breath. Notably, on cross-examination, Trooper Stemrich testified that Ms. Delgado told him that Appellant had been driving the vehicle. Trooper Stemrich asked Appellant to undergo field sobriety tests, but Appellant refused.

On behalf of the defense, Appellant's son, Ms. Delgado, and Appellant testified. Appellant's son explained he was in the minivan with his parents at the time of the collision. He stated Ms. Delgado was driving the vehicle when the crash occurred. On cross-examination, Appellant's son said he would not want Appellant to get into trouble. (*Id.* at 43-45).

Ms. Delgado testified that she had been driving the vehicle when the accident occurred, and that she had been drinking that night. Ms. Delgado claimed she took a video of Appellant's interaction with the police at the scene after the collision. Ms. Delgado noted the video showed her in possession of the keys to the minivan. (*Id.* at 46-50).

- 4 -

Finally, Appellant testified he was asleep in the passenger seat of the minivan and Ms. Delgado was driving at the time of the crash. Appellant said he was drunk when the accident occurred and the crash awakened him. Appellant also emphasized Ms. Delgado's video as showing she had possession of the keys to the minivan. (*Id.* at 50-53).

On December 28, 2018, the court convicted Appellant of one count each of DUI—general impairment, careless driving, accidents involving damage to unattended vehicle or property, and disorderly conduct. The court sentenced Appellant on February 27, 2019, to an aggregate term of time served to six months' incarceration, plus fines, costs, community service, and driver's license suspension. On March 1, 2019, Appellant filed a timely post-sentence motion, raising a challenge to the weight of the evidence. The court denied the post-sentence motion on June 26, 2019. Appellant timely filed a notice of appeal on July 25, 2019. The court ordered Appellant on July 31, 2019, to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b); Appellant timely complied on August 20, 2019.

Appellant raises two issues for our review:

> Did the Commonwealth present sufficient evidence to prove, beyond a reasonable doubt, that…Appellant was the operator or in control of the subject vehicle which served as the common and essential element to the charges of DUI, careless driving and accident involving damage to unattended vehicle or property?
>
> Was the verdict of guilt as to the charges of DUI, careless driving and accident involving damage to unattended vehicles or property against the weight of the evidence in

- 5 -

that the evidence failed to establish that…Appellant was the driver or in control of the subject vehicle at the time of the accident?

(Appellant's Brief at 2).

In his issues combined, Appellant argues the Commonwealth failed to prove Appellant was the driver of the Honda Odyssey or that he had physical control of the vehicle at the time of the collision. Appellant contends Victim and Victim's son saw Appellant in the driver's seat only after the accident. Appellant maintains Victim's testimony that a male was in the driver's seat of the minivan immediately after the crash is of little consequence, because Victim did not have his glasses on at the time and did not identify Appellant. Appellant insists Victim's son did not testify that he observed the minivan's engine running or Appellant operating the minivan. Appellant submits Mr. Hollitt could not know whether Appellant and Ms. Delgado changed seats in the vehicle after the crash.

Appellant further asserts that both his son and Ms. Delgado confirmed Ms. Delgado was driving the minivan when the accident occurred. Appellant posits Ms. Delgado's testimony is significant, as she conceded she had been drinking on the night of the collision, implicating herself. Appellant claims Ms. Delgado's video established she, not Appellant, had possession of the keys to the minivan. Appellant reasons his testimony that he was not driving the minivan because he was drunk is plausible. Appellant concludes the trial evidence was insufficient to support Appellant's convictions, the verdict was

against the weight of the evidence, and this Court should reverse and discharge, or alternatively, grant Appellant a new trial.[2] We disagree.

Appellate review of a claim challenging the sufficiency of the evidence is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Jones***, 874 A.2d 108, 120-21 (Pa.Super. 2005) (quoting

***Commonwealth v. Bullick***, 830 A.2d 998, 1000 (Pa.Super. 2003)).

Additionally, the following principles apply to a weight of the evidence claim:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the

_____

[2] Appellant does not challenge his disorderly conduct conviction on appeal.

witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the…verdict if it is so contrary to the evidence as to shock one's sense of justice.

***Commonwealth v. Small***, 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Champney***, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (most internal citations omitted).

The Motor Vehicle Code defines the offenses of DUI—general impairment, careless driving, and accidents involving damage to unattended vehicle or property, in relevant part, as follows:

**§ 3802. Driving under influence of alcohol or controlled substance**

**(a) General impairment**.—

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

\* \* \*

75 Pa.C.S.A. § 3802(a)(1).

**§ 3714. Careless driving**

**(a) General rule.—**Any person who drives a vehicle in

careless disregard for the safety of persons or property is guilty of careless driving, a summary offense.

\* \* \*

75 Pa.C.S.A. § 3714(a).

### § 3745. Accidents involving damage to unattended vehicle or property

**(a) General rule**.—The driver of any vehicle which collides with or is involved in an accident with any vehicle or other property which is unattended resulting in any damage to the other vehicle or property shall immediately stop the vehicle at the scene of the accident or as close thereto as possible and shall then and there either locate and notify the operator or owner of the damaged vehicle or other property of his name, address, information relating to financial responsibility and the registration number of the vehicle being driven or shall attach securely in a conspicuous place in or on the damaged vehicle or other property a written notice giving his name, address, information relating to financial responsibility and the registration number of the vehicle being driven and shall without unnecessary delay notify the nearest office of a duly authorized police department. Every stop shall be made without obstructing traffic more than is necessary.

75 Pa.C.S.A. § 3745(a).

Instantly, in addressing Appellant's challenge to the sufficiency of the evidence, the trial court explained: (1) although Victim could not positively identify Appellant, he described the driver as an individual matching Appellant's ethnicity and approximate age; (2) Victim's son positively identified Appellant as the individual in the minivan's driver seat; (3) Mr. Hollitt saw the minivan strike Victim's parked car and identified Appellant as the driver of the minivan; and (4) Trooper Stemrich testified that Ms. Delgado

told him Appellant was driving the vehicle. Thus, the trial court concluded that the testimony of the Commonwealth's witnesses established Appellant drove the minivan at the time of the collision. (**See** Trial Court Opinion, filed September 20, 2019, at 3-4, unpaginated). We see no reason to disrupt the court's determination as the trier of fact. **See Jones, supra**. Viewed in the light most favorable to the Commonwealth as verdict-winner, the evidence was sufficient to sustain Appellant's convictions. **See id.**; 75 Pa.C.S.A. 3714(a); 3745(a); 3802(a)(1).

Regarding Appellant's weight of the evidence, the trial court reasoned:

> There was no inconsistent testimony presented by the Commonwealth during trial. Although the defense presented the testimony of two witnesses in addition to [Appellant], they all had a motive to testify in a less than truthful manner. This [c]ourt found their testimony to have no credibility whatsoever. Nothing leads to the conclusion that the verdict was against the weight of the evidence. Upon a thorough review of the evidence presented at trial, the guilty verdict rendered on December 28, 2018, in no way shocks this [c]ourt's sense of justice or conscience.

(Trial Court Opinion at 5, unpaginated). The trial court, as fact-finder, was free to accept the testimony of the Commonwealth's witnesses, and reject the testimony of the defense witnesses. **See Champney, supra**. The record support's the trial court's rationale, and we see no reason to disturb it. **See id.** Therefore, Appellant's challenge to the weight of the evidence also merits no relief. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/2/2020