**COMMONWEALTH of Pennsylvania,**
**Appellee,**

**v.**

**Jacob GREENBERG, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 14, 2005.
Filed Oct. 20, 2005.

Francis J. Genovese, Norristown, for appellant.

Bruce L. Castor, Jr., Asst. Dist. Atty., Norristown, for Com., appellee.

BEFORE: MUSMANNO, BENDER and OLSZEWSKI, JJ.

---

OPINION BY BENDER, J.:

¶ 1 This is an appeal from a judgment of sentence imposed after Appellant was convicted of the summary offense of reckless driving. Appellant raises one question for our review, whether the evidence was sufficient to support the conviction for reckless driving? We reverse.

¶ 2 According to the trial court:

On February 23, 2004, the Defendant was operating his motor vehicle in Upper Dublin Township on Virginia Drive, heading southbound. It was a dry day. The speed limit on Virginia Drive was thirty-five miles per hour. Virginia Drive is a four lane highway with two lanes in each direction.

As the Defendant was proceeding on Virginia Drive he approached a portion of the roadway that curved approximately ninety degrees. Instead of reducing his speed to properly negotiate the sharp turn in the road, as required by the Pennsylvania Motor Vehicle Code, the Defendant proceeded to make the turn at an excessive rate of speed. The Defendant concedes that he was driving approximately 20 m.p.h. over the speed limit when he made the turn.

Trial Court Opinion (T.C.O.), 4/12/05, at 1–2. While negotiating the turn, the tail end of Appellant's vehicle crossed over the center line. Appellant then apparently lost control of his vehicle as the vehicle did a 180 degree spin and collided with a vehicle driven by Kristi Binkley. Binkley's vehicle had been traveling northbound in the lane closest to the curb. Thus, Appellant's vehicle had crossed two lanes of travel in colliding with Binkley's vehicle.

¶ 3 Appellant was subsequently cited for reckless driving and was convicted of that offense by a district justice. Appellant filed a summary appeal on March 9, 2004, which was heard on February 3, 2005. Following a de novo non-jury trial, Appel-

lant was convicted and fined. Appellant filed the present appeal on March 3, 2005.

¶ 4 Appellant's only issue challenges the sufficiency of the evidence. In Commonwealth v. DeJesus, 567 Pa. 415, 787 A.2d 394, 398 (2001), our Supreme Court recited the relevant standard of review of a challenge to the sufficiency of the evidence:

The standard for reviewing the sufficiency of the evidence is whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all the elements of the offenses beyond a reasonable doubt.

¶ 5 The charging of Appellant with reckless driving under the facts of the present case reflects a misapprehension of the hierarchy of offenses relating to driving with less prudence than the law requires and the differentiation among these offenses. Reduced to its essence, Appellant was charged with reckless driving for driving too fast for the road conditions. That is, Appellant drove too fast to negotiate a curve in the road or, alternatively, failed to sufficiently reduce his speed to negotiate that curve. Although, quite possibly, Appellant's driving might constitute some violation of the Vehicle Code (VC), a review of the elements of reckless driving and its place in the VC demonstrates that Appellant's conduct does not rise to the level of recklessness that is the hallmark of the offense of reckless driving.

¶ 6 Among the offenses in the Vehicle Code (VC), 75 Pa.C.S. § 101 et seq., that are, or might be, implicated when a driver drives "too fast" are:

Maximum speed limits, i.e., "speeding," (75 Pa.C.S. § 3362),

Driving vehicle at safe speed, *i.e.*, "driving too fast for conditions," (75 Pa.C.S. § 3361),

Careless driving, (75 Pa.C.S. § 3714), and

Reckless driving (75 Pa.C.S. § 3736).

Among these offenses, maximum speed limits is essentially a *per se* offense. That is, it requires no *mens rea* and there is no reference to the prudence of the speed driven. In contrast, driving a vehicle at safe speed does relate to the prudence of the speed driven, in that this section of the VC requires the driver to maintain a speed that is "prudent under the conditions and having regard to the actual and potential hazards then existing." 75 Pa.C.S. § 3361. Thus, violating § 3361 in essence signals the conclusion that the driver drove in an imprudent fashion. Careless driving requires that the driver drive "a vehicle in careless disregard for the safety of persons or property," 75 Pa.C.S. § 3714, and reckless driving requires a driver to drive in "willful or wanton disregard for the safety of persons or property." 75 Pa.C.S. § 3736. Notably, reckless driving is situated in the "serious traffic offenses" portion of the VC along with such offenses like driving under the influence and homicide by vehicle, thereby signaling that it contemplates the most serious departures from the standard of care the VC imparts upon operators. This assessment is backed by caselaw.

¶ 7 In *Commonwealth v. Forrey*, 172 Pa.Super. 65, 92 A.2d 233, 234 (1952), a case which discussed the removal of the willful and wanton element from reckless driving in 1951, we stated:

> The 1951 amendment redefined reckless driving by eliminating *willful* or *wanton* conduct in the operation of a vehicle as an essential element of the offense. But

in so doing it is clear that the legislature did not intend to increase a driver's responsibility for ordinary negligence by reclassifying mere negligence as reckless driving. What was contemplated in the language 'carelessly disregarding the rights or safety of others, or in a manner so as to endanger any person or property' was to set the minimal requisite of the statutory offense of reckless driving at less than willful and wanton conduct on the one hand and, on the other, something more than ordinary negligence or the mere absence of care under the circumstances.

■ ¶ 8 Consequently, even after the term willful and wanton was removed, reckless driving required something more than ordinary negligence. It follows then, that by reinserting willful and wanton into the definition, the standard for reckless driving was raised substantially higher. Since the reinsertion of willful and wanton coincided with the introduction of a lesser offense called careless driving,[1] it stands to reason that to satisfy the elements of reckless driving, the offender's driving must be a gross departure from prudent driving standards. We recognized this in *Commonwealth v. Bullick*, 830 A.2d 998 (Pa.Super.2003), where we expounded upon the nature of reckless driving while focusing upon the element key to that offense, the requisite *mens rea* of willful or wanton conduct. We stated:

> the *mens rea* necessary to support the offense of reckless driving is a requirement that Appellant drove in such a manner that there existed a substantial risk that injury would result from his driving, i.e., a high probability that a motor vehicle accident would result from driving in that manner, that he was aware of that risk and yet continued to drive in such a manner, in essence, cal-

1. In essence, careless driving took the place of the formerly defined reckless driving.

lously disregarding the risk he was creating by his own reckless driving.

*Id.* at 1003. Thus, by including provisions for maximum speeds, unsafe speed, careless driving and reckless driving, the legislature created a stratum of violations or offenses to cover driving behavior that is increasingly divorced from prudent driving behavior.

¶ 9 In the present case, it is clear that Appellant's driving did not meet the standard for a finding of willful and wanton disregard for the safety of others or property. The testimony at trial indicated that Appellant was proceeding down a four-lane highway/road at a speed of roughly 55 miles-per-hour, lost control of his vehicle, while negotiating a turn causing it to spin, and collided with another vehicle. While Appellant was clearly proceeding "too fast" for the conditions of the roadway, notably a relatively sharp turn in the road, there is no indication that Appellant was traveling so fast as to create a high probability that a motor vehicle accident would occur. Notably, a four lane highway, particularly when located in suburban or rural areas, often possesses a speed limit of 55 miles-per-hour; and even when not, many drivers travel at that rate of speed without a resulting accident. Thus, although in excess of the posted speed limit, Appellant's speed was not so excessive to qualify as a willful and wanton disregard for the safety of others. Indeed, as we stated in *Bullick:*

> [P]roof that Appellant was exceeding the speed limit does not necessarily prove reckless driving ... [L]ife experience

teaches without possibility of refutation that many drivers drive at high rates of speed on a regular basis without tragic consequence. While undoubtedly, ... "speeding" may ... increase the risk that a driver will be involved in a motor vehicle accident, more "ordinary" or "common" speeding does not necessarily produce a "substantial" risk that an accident will occur. Indeed, as anyone who has ever driven the speed limit down the interstate has easily observed, not only will an overwhelming majority of drivers who drive in excess of the legal speed limit not crash their vehicles, they will also escape citation for exceeding the speed limit.

*Id.* at 1004–05.

¶ 10 The facts of *Bullick* further support the result reached here. Although there was a lack of eyewitness testimony, the facts in *Bullick* supported the proposition that Bullick drove at a speed too fast to allow him to negotiate a "T" intersection.[2] Indeed, Bullick essentially failed to make the turn at all, as he went through the intersecting roadway and across the berm of the road and traveled another 45 to 60 feet. Despite this, we found the evidence insufficient to support the willful and wanton requirement necessary for reckless driving.

¶ 11 Additionally, there is no evidence that Appellant was driving in such a manner that he was aware of the risk he was creating yet continued driving in that manner regardless of that risk. Undoubtedly, one can drive at such an excessive

---

2. We recited the relevant facts thusly:

> On June 16, 2002, Officer Douglas Slemmer of the Bristol Township, Bucks County Police Department was dispatched to the scene of a one-vehicle accident at the "T" intersection formed where Mill Creek Parkway ends at Bristol Oxford Valley Road in Levittown. N.T., 10/24/02, at 5–6. Officer Slemmer observed a set of skid marks ap-

> proximately 100 feet long, which began on Mill Creek Parkway and crossed over Bristol Oxford Valley Road and onto the grass near a wooded area, leading to a damaged and unoccupied pick-up truck 45 to 60 feet off the roadway. *Id.* at 6–8. The vehicle was registered to Appellant.

*Bullick,* 830 A.2d at 999.

speed, and in such a reckless manner, that one must be deemed aware of the fact that he is creating a substantial risk of causing a motor vehicle collision. Although dealing with a standard requiring extreme indifference to human life, the facts of *Commonwealth v. Kling*, 731 A.2d 145 (Pa.Super.1999), illustrate this point and are instructive with respect to the element of conscious disregard of the risk one's driving was creating. In *Kling:*

> Appellant was deliberately racing his high-powered car at speeds of 75–80 m.p.h. on a two and one-half mile stretch of a curvy mountain road. He was familiar with this road, having traveled it two to three times per week for over a year prior to the crash. He passed five cautionary signs warning him to slow down around the treacherous curves. In spite of these warnings, appellant proceeded at high rates of speed and, cutting the curves in order to negotiate the turns, he nearly hit Jean Pepple driving in the opposite lane of travel.

*Id.* at 150. Under these circumstances, our Supreme Court concluded:

> Without a doubt, the aggregate of these circumstances plainly warned appellant his conduct was nearly certain to result in a serious or fatal disaster. Nevertheless, he consciously disregarded this awareness and continued his race for eight-tenths of a mile after running Ms. Pepple off the road. Illegally passing two pick-up trucks, sustaining his reckless and malicious conduct, appellant sped into a dangerous double blind curve where he smashed into the victims.
>
> Unlike [*Commonwealth v.*] *Comer,* [552 Pa. 527, 716 A.2d 593 (Pa.1998),] the crash here did not ensue immediately after the driver became aware of his life-threatening conduct. To the contrary, appellant had adequate time to calculate and reflect upon the consequences of his reckless conduct, thus rendering the choice to continue it malicious.

*Id.* Unlike Kling, who engaged in extremely dangerous driving behavior even after having close calls with oncoming traffic, there is no evidence Appellant had any difficulties negotiating the road or came close to colliding with other vehicles prior to encountering the curve that caused him to lose control here. As such, and given that Appellant's speed was not so excessive as to itself create a high risk of an accident, which could be imputed to Appellant by default, the evidence of conscious disregard, a key component of the willful and wanton standard, is lacking.

¶ 12 Lastly, contrary to the putative intent behind its publication, a passage from the trial court's opinion supports the premise that Appellant was not guilty of reckless driving, but possibly a lesser offense. The trial court states: "it should be noted that the Defendant was 16 years old and had been driving less then [sic] two weeks at the time he was cited. A youthful and inexperienced driver would be expected to observe extreme caution on the highway and observe all speed limits." T.C.O. at 1. The trial court cites Appellant's lack of experience at the time the incident occurred and highlights that a driver lacking in experience would be expected to exercise great caution. By failing to exercise the caution befitting his lack of experience, Appellant was certainly negligent. However, given his lack of experience, it is also far more likely that Appellant lacked the cognizance of the danger his driving created.

¶ 13 As the caselaw demonstrates, reckless driving requires driving that not only grossly deviates from ordinary prudence but also creates a substantial risk that property damage or personal injury

will follow. It is also necessary that the driving reflect a **conscious disregard** for the danger being created by the reckless driving. It is clear from the strata of offenses set forth in the VC that reckless driving is reserved for driving behavior deviates far more from normal care than that which occurred here. Conceivably, Appellant's driving conduct might support driving at an unsafe speed and/or careless driving, but it clearly cannot rise to the level of willful and wanton disregard.

¶ 14 In short, we take notice of the fact that the legislature has created a hierarchy of offenses that correlate to increasingly imprudent behavior. These offenses run the spectrum from strict liability to reckless behavior, which requires willful and wanton driving behavior. While Appellant certainly violated some section of the VC, the Commonwealth's efforts to attach the greatest offense to Appellant's driving behavior would work to obliterate the lines between the offenses in the spectrum.

¶ 15 For the above reasons, we reverse the judgment of sentence.

¶ 16 Judgment of sentence reversed. Jurisdiction relinquished.