IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Steve E. Piotrowski,　　　　　　　　　:
　　　　　　　Petitioner　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　v.　　　　　　　　　　　　　:　　No. 1232 C.D. 2023
　　　　　　　　　　　　　　　　　　:　　Argued: September 9, 2024
Department of Health,　　　　　　　　:
　　　　　　　Respondent　　　　　　　:

BEFORE:　　HONORABLE ELLEN CEISLER, Judge
　　　　　　HONORABLE LORI A. DUMAS, Judge
　　　　　　HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT　　　　　　FILED:　October 24, 2024

　　　　　Steve E. Piotrowski (Piotrowski) petitions for review of an adjudication of the Department of Health (Health Department) that suspended his license as an emergency medical services provider for operating an ambulance in a reckless manner. In doing so, the Health Department rejected the proposed adjudication of its hearing officer that Piotrowski's operation of an ambulance en route to an emergency in excess of the posted speed limit did not, *ipso facto*, constitute reckless conduct. On appeal, Piotrowski argues that the Health Department erred in its rejection of the hearing officer's interpretation and application of the term "reckless" as set forth in Section 8121(a)(6) of the Emergency Medical Services System Act (EMS Act), 35 Pa. C.S. §8121(a)(6). After review, we reverse the Health Department's adjudication.

## Background

Piotrowski holds a certificate as an emergency medical services (EMS) provider[1] and as an emergency medical service vehicle operator (EMS operator). Piotrowski has been employed by Scranton Quincy Ambulance LLC d/b/a Commonwealth Health Emergency Medical Services (Commonwealth Health) for approximately 12 years.

On October 4, 2021, the Health Department's Bureau of Emergency Services (Bureau) instituted an enforcement action against Piotrowski as a result of an accident that occurred on July 30, 2021. In that accident, the ambulance operated by Piotrowski collided with another vehicle, causing the death of the other driver, Beverly Zeman (Decedent). Shortly before the collision, the ambulance was recorded traveling at 65 miles per hour, where the posted speed limit was 40 miles per hour. The Bureau asserted that Piotrowski's chosen rate of speed constituted reckless conduct in violation of Section 8121(a)(6) of the EMS Act.

The Secretary of Health appointed Monty Batson as the hearing officer for the administrative hearing on the Bureau's enforcement action. He scheduled a hearing for June 17, 2022, at which the Bureau presented the testimony of Jenni Hoffman, Dr. Aaron Rhone, and Matthew Browning.

Hoffman is employed by the Health Department as a Program Specialist. She testified that her investigation of the accident included an interview

---

[1] There are different types of EMS providers. *See* 35 Pa. C.S. §8103 (EMS provider includes, *inter alia*, an emergency medical responder, an emergency medical technician, an advanced emergency medical technician, and a paramedic). Piotrowski is certified as an emergency medical technician (EMT) and a paramedic. An EMT is authorized to perform basic interventions with equipment found on an EMS vehicle. 35 Pa. C.S. §8115(a). A paramedic can perform basic and advanced interventions and administration of medications with basic and advanced equipment found on an EMS vehicle. 35 Pa. C.S. §8117(a).

of Piotrowski; a review of a letter from Piotrowski's attorney; and a review of relevant documents, including photographs, a police crash report, and data from the ambulance's global positioning system (GPS). She determined that Piotrowski was driving above the speed limit, but she acknowledged that Decedent entered the road without stopping or yielding to Piotrowski's ambulance.

Dr. Rhone is employed by the Health Department as the Bureau's Director, responsible for regulatory compliance. He testified that Piotrowski was an EMS instructor and, as such, knowledgeable in the proper operation of emergency service vehicles under the Vehicle Code, 75 Pa. C.S. §§101-9701. After he reviewed Hoffman's investigation, an accident reconstruction report from Michelle Price, and materials submitted by Piotrowski's counsel, Dr. Rhone concluded that on July 30, 2021, Piotrowski operated his ambulance in a reckless manner in violation of Section 8121(a)(6) of the EMS Act. Accordingly, the Bureau ordered Piotrowski to show cause why his certification as an EMS provider should not be suspended or revoked.

The Bureau's last witness was Matthew Browning, an employee of Commonwealth Health responsible for the GPS units in Commonwealth Health's ambulances. He testified that the final speed recorded for Piotrowski's ambulance was 65 miles per hour at 5:16:11 p.m. The time of the collision was 5:16:27 p.m., or 16 seconds after that recorded speed. The GPS unit did not record the ambulance's speed at the moment of the collision.

In response to the Bureau's case, Piotrowski testified. He stated that as an EMS provider, he provides basic life support, which includes airway management, cardiopulmonary resuscitation (CPR), measurement of vital signs, bleeding control, and patient transportation. He is also a certified EMS operator and an EMS instructor. In 2014, he obtained his paramedic certification, which allows

3

him to perform more advanced interventions, including resuscitation, administration of intravenous medications, and endotracheal intubations.

On July 30, 2021, Piotrowski was assigned to work 7:00 a.m. to 7:00 p.m. with his wife, Kathleen, also an EMT, out of the Texas Ford Fire Department Station in Honesdale, Pennsylvania. At approximately 5:00 p.m., they were dispatched to the Beach Lake Boat Launch to respond to a reported overdose. Tusten EMS and Beach Lake Fire Department were also dispatched to the emergency.[2]

After receiving the dispatch, Piotrowski activated the ambulance's siren and lights. On the way to the Beach Lake Boat Launch, approximately 30 vehicles responded to the ambulance's siren and lights by pulling over to the side of the road and stopping. On State Route 652, the ambulance passed through "rural farm country" with some businesses. N.T. 78; R.R. 116a. At approximately 5:15 p.m., Piotrowski "changed [the] siren tone" when, suddenly, Kathleen "screamed out, oh no, she's not stopping." N.T. 79; R.R. 117a. He saw Decedent's vehicle leave the parking lot of a Dollar General Store without stopping at the stop sign posted at the parking lot's exit. Decedent did not look for oncoming traffic before pulling out onto the roadway.

Piotrowski testified that the collision could not be avoided at any speed. He immediately braked and swerved to the left. He could not swerve to the right because doing so would have taken the ambulance into the Dollar General Store's parking lot where there were people walking to and from their cars. Piotrowski testified that he did not know the ambulance's speed just before the collision.

---

[2] Piotrowski explained that Tusten EMS is a basic life support transport service. "They would be responding to transport [the] patient to the hospital." Notes of Testimony, 6/27/2022, at 77 (N.T. __); Reproduced Record at 115a (R.R. __). Beach Lake Fire Department is a quick response service that can assist the EMT crew. *Id*.

Piotrowski explained that the collision caused the ambulance to flip over onto its side and do a 180-degree turn, so that it stopped facing the opposite direction. He immediately called Wayne County Emergency Dispatch. Neither he nor Kathleen were able to get out the vehicle. Three responders removed the windshield and pulled Piotrowski out of the vehicle. Kathleen had to be cut out of her seatbelt.

Kathleen Piotrowski, who has been a certified EMT for 15 years, testified about the accident. To get to their dispatch location, their ambulance traveled through a rural landscape of mostly fields and farms. As they approached the Dollar General Store, she saw Decedent "approaching the big thick white line and stop sign and not looking any which direction" as she drove out of the parking lot. N.T. 97; R.R. 135a. This caused Kathleen to shout "oh my God, she's not stopping." N.T. 98; R.R. 136a. She testified that nothing could have been done to avoid the collision, and she confirmed that approximately 30 vehicles had pulled over to the side of the road during their drive to the dispatch location.

Michelle Price, a vehicle accident reconstructionist with Rimkus Consulting Group, testified on behalf of Piotrowski.[3] Prior to working at Rimkus Consulting Group, Price was an accident reconstructionist for the Baltimore Police Department. Price testified that she visited the scene of the collision and downloaded data from the black box of Decedent's vehicle.[4] That data showed that Decedent did not engage her brake pedal before pulling onto the road.

---

[3] Price is accredited by the Accreditation Commission for Traffic Accident Reconstruction, which is the only organization that accredits motor vehicle accident reconstructionists.

[4] Price explained that vehicles have an accelerometer placed where the radio and heating controls are located. The accelerometer monitors a vehicle's movement, so that if there is a sudden change in acceleration (forward, backward, or side-to-side), greater than five miles per hour, the

5

**Hearing Officer's Proposed Report**

On May 12, 2023, the hearing officer issued a proposed report recommending that the Order to Show Cause issued to Piotrowski be dismissed. In support of that recommendation, the proposed report made findings of fact, which are not disputed by the parties, and they follow.

On July 30, 2021, Commonwealth Health Ambulance No. 8, operated by Piotrowski, was dispatched to an emergency. Piotrowski's wife, Kathleen, a certified EMT, was the second crew member onboard the ambulance. Upon receiving the dispatch call, Piotrowski activated both the audible and visual signals of the ambulance, which remained activated throughout the trip.

On State Route 652, as Piotrowski approached the Dollar General Store, he changed the tone of the siren to get the attention of any drivers on the road. Although Decedent had a legal obligation to stop and remain stopped until oncoming traffic had passed, she exited the parking lot without stopping.

Piotrowski was unable to avoid colliding with Decedent's vehicle and struck Decedent's vehicle as it entered the roadway. The last GPS recorded speed of the ambulance, 16 seconds before impact, was 65 miles per hour. The posted speed limit at the site of the collision is 40 miles per hour.

The proposed report then turned to a legal analysis. The Bureau proved that Piotrowski operated the ambulance at a speed above the posted limit. However, the Bureau was required to prove, by a preponderance of the evidence, that Piotrowski "was operating an emergency vehicle in a reckless manner" to establish a violation of Section 8121(a)(6) of the EMS Act, 35 Pa. C.S. §8121(a)(6). Noting that the term "reckless" is not defined in the EMS Act, the hearing officer explained

_____

accelerometer records that data. The data recorded includes speed, braking, the engine's revolutions per minute, and the throttle position.

6

that this required a construction "according to the rules of grammar and according to their common and approved usage[.]" 1 Pa. C.S. §1903(a). Black's Law Dictionary defines "reckless" as follows:

> Characterized by the *creation of a substantial and unjustifiable risk of harm to others* and by a conscious (and sometimes deliberate) disregard for or indifference to that risk; heedless; rash. *Reckless conduct is much more than mere negligence*: it is a gross deviation from what a reasonable person would do.

Proposed Report at 13 (quoting BLACK'S LAW DICTIONARY 1524 (11th ed. 2019)) (emphasis added). The hearing officer also considered the Vehicle Code, which states that "[a]ny person who drives any vehicle in *willful or wanton disregard for the safety of persons or property* is guilty of reckless driving." 75 Pa. C.S. §3736(a) (emphasis added). The hearing officer also cited case law precedent on the meaning of "reckless driving," which explained as follows:

> The *mens rea* necessary to support the offense of reckless driving is a requirement that [the individual] drove in such a manner that there existed a substantial risk that injury would result from his driving, i.e., a *high probability that a motor vehicle accident would result from driving in that manner*, that he was aware of that risk and yet continued to drive in such a manner, in essence, *callously disregarding the risk he was creating* by his own reckless driving.

*Commonwealth v. Bullick*, 830 A.2d 998, 1003 (Pa. Super. 2003) (emphasis added). Finally, the hearing officer cited *Commonwealth v. Greenberg*, 885 A.2d 1025, 1028 (Pa. Super. 2005), for the proposition that driving a vehicle at a speed 25 miles per hour above the posted limit does not, *ipso facto*, constitute recklessness.

The hearing officer concluded that by exceeding the speed limit, Piotrowski may have operated the ambulance in a negligent manner. However, reckless conduct requires more. Piotrowski was operating a vehicle with the word

7

"Ambulance" printed on the back door and front hood of the vehicle and both the audible and visual signals were activated the entire time it was in operation. It was reasonable for Piotrowski to expect that vehicles would respond appropriately. The evidence did not show that Piotrowski acted in wanton disregard for the safety of persons and property.[5]

On June 14, 2023, the Bureau filed exceptions, arguing that the hearing officer erred by relying on the Vehicle Code's use of the term "reckless" to construe the EMS Act. The parties each filed briefs on the exceptions.[6]

### Health Department Adjudication

The Secretary of Health appointed Cindy Findley, Deputy Secretary for Health Promotion and Disease Prevention, to adjudicate the exceptions.[7] The Deputy Secretary granted the Bureau's exceptions.

To determine the meaning of the word "reckless," the Deputy Secretary rejected the use of Black's Law Dictionary as a source because it is intended for legal definitions and not for the common and approved usage of words. Instead, the Deputy Secretary relied on Merriam-Webster's online dictionary, which defines "reckless" as "[m]arked by lack of proper caution: careless of consequences."

---

[5] At the hearing, the parties disagreed on whether the vehicle driven by Piotrowski was entitled to be driven at a speed in excess of the speed limit under 75 Pa. C.S. §3105(a)-(e). The hearing officer concluded that emergency vehicles may exceed the speed limit, but an "ambulance," *inter alia*, is not so privileged under 75 Pa. C.S. §3105(d). The Vehicle Code defines an emergency vehicle as an ambulance, and it defines ambulance as an emergency vehicle. 75 Pa. C.S. §102. Both "ambulance" and "emergency vehicle" include "advanced life support" vehicles. The issue of whether an ambulance may exceed the speed limit is not before the Court in this appeal.

[6] *See* 1 Pa. Code §35.226(a)(2) (allowing for review of proposed report by agency head after exceptions are filed or "upon review initiated by the agency head").

[7] Section 213 of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §73, authorizes the Deputy Secretary, in the absence of the Secretary of Health, to perform all the duties vested in the Secretary of Health.

Adjudication, 10/12/2023, at 8 (quoting MERRIAM-WEBSTER ONLINE DICTIONARY, available at https://www.merriam-webster.com/dictionary/reckless (last visited October 24, 2024)). The Deputy Secretary noted that other sources define "reckless" as being unconcerned about the consequences of some action, *i.e.*, careless.

The Deputy Secretary held that the hearing officer erred in considering the Vehicle Code's definition of reckless driving. First, Section 8121(a)(6) of the EMS Act uses the phrase "reckless manner" not "reckless driving," *i.e.*, the language in 75 Pa. C.S. §3736(a). Second, because Piotrowski did not assert that Section 8121(a)(6) of the EMS Act is ambiguous, it was error to consider similar language in the Vehicle Code. The Deputy Secretary concluded that the Bureau's evidence demonstrated that Piotrowski operated the ambulance in a reckless, or careless, manner, in violation of the EMS Act.

Based on this conclusion, the Deputy Secretary imposed sanctions. After considering Piotrowski's years of service, lack of driving citations, and lack of any prior EMT discipline, the Deputy Secretary imposed the following sanctions on Piotrowski: (1) $500 fine; (2) one-year suspension as an EMS provider, with a return to work on a probationary basis for one year; and (3) completion of three courses on driving safety prior to returning to work.

### Appeal

On appeal,[8] Piotrowski raises three issues. They follow:

(1) Whether the Deputy Secretary for Health Promotion and Disease Prevention erred in her interpretation of the term reckless as contained in 35 Pa. C.S. §8121(a)(6).

---

[8] This Court's review of the Health Department's adjudication determines whether constitutional rights were violated, whether an error of law was committed or whether the necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. §704; *Firman v. Department of State, State Board of Medicine*, 697 A.2d 291, 293 (Pa. Cmwlth. 1997).

(2) Whether the Deputy Secretary for Health Promotion and Disease Prevention erred in concluding that the Hearing Examiner improperly altered the burden of proof in considering the reckless driving statute and related case[]law.

(3) Whether the Deputy Secretary for Health Promotion and Disease Prevention erred in imposing disciplinary action upon Petitioner, [] Piotrowski.

Piotrowski Brief at 3.

## Applicable Law

We begin with a review of the Vehicle Code, which grants special privileges to drivers of emergency vehicles responding to an emergency call. It states as follows:

> **(a) General rule.--**The driver of an emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm or other emergency call, may exercise the privileges set forth in this section, but subject to the conditions stated in this section.
>
> **(b) Exercise of special privileges.--**The driver of an emergency vehicle may:
>
>> (1) Park or stand, irrespective of the provisions of this part.
>>
>> (2) Proceed past a red signal indication or stop sign, but only after slowing down as may be necessary for safe operation, except as provided in subsection (d).
>>
>> (3) *Exceed the maximum speed limits so long as the driver does not endanger life or property, except as provided in subsection (d).*
>>
>> (4) Disregard regulations governing direction of movement, overtaking vehicles or turning in specified directions.
>
> **(c) Audible and visual signals required.--**The privileges granted in this section to an emergency vehicle shall apply only when the vehicle is making use of an audible signal and visual

10

signals meeting the requirements and standards set forth in regulations adopted by the department.

**(d) Ambulances, blood delivery vehicles and human organ delivery vehicles.--***The driver of an ambulance*, blood delivery vehicle or human organ delivery vehicle *shall comply with maximum speed limits*, red signal indications and stop signs. After ascertaining that the ambulance, blood delivery vehicle or human organ delivery vehicle will be given the right-of-way, the driver may proceed through a red signal indication or stop sign.

. . . .

**(e) Exercise of care.--**This section does not relieve the driver of an emergency vehicle from the duty to drive with due regard for the safety of all persons.

75 Pa. C.S. §3105(a)-(d), (e) (emphasis added).

The Vehicle Code contains definitions relevant to Section 3105. They follow:

**"Ambulance."** Any vehicle which is specifically designed, constructed or modified and equipped and is used or intended to be used and is maintained or operated for the purpose of providing emergency medical care to and transportation of human patients. *The term includes advanced or basic life support vehicles that may or may not transport such patients*.

**"Emergency Vehicle."** A State or county emergency management vehicle, fire department vehicle, police vehicle, sheriff vehicle, *ambulance, advanced life support squad vehicle, basic life support squad vehicle. . . .*

75 Pa. C.S. §102 (emphasis added).

There are other provisions of the Vehicle Code that relate to vehicle speed and safety. Relevant here, Section 3736 of the Vehicle Code prohibits reckless driving. It states:

**(a) General rule.--**Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving.

11

**(b) Penalty.--**Any person who violates this section commits a summary offense and shall, upon conviction, be sentenced to pay a fine of $200.

75 Pa. C.S. §3736.

The EMS Act governs the conduct of EMS providers and EMS operators. An "EMS provider" is any of the following:

(1) An emergency medical responder.

(2) An emergency medical technician.

(3) An advanced emergency medical technician.

(4) A paramedic.

(5) A prehospital registered nurse.

(6) A prehospital physician extender.

(7) A prehospital emergency medical services physician.

(8) An individual prescribed by regulation of the Department of Health to provide specialized emergency medical services.

35 Pa. C.S. §8103. An EMS vehicle operator is "[a]n individual certified by the Department of Health to operate a ground emergency medical services vehicle." *Id.*

The EMS Act sets forth the numerous grounds for the suspension or revocation of an EMS provider's certification. 35 Pa. C.S. §8121(a). Relevant here, it states as follows:

**(a) Grounds for discipline.**--*The department may discipline an EMS provider* or applicant for EMS provider certification for any of the following reasons:

. . . .

(6) The operation of an emergency vehicle in a reckless manner or while under the influence of alcohol or illegal drugs or the knowing abuse of legal drugs.

35 Pa. C.S. §8121(a)(6) (emphasis added). When discipline is authorized under Section 8121(a), the Department may take one or more of the follow actions:

12

(1) Deny the application for certification.

(2) Issue a public reprimand.

(3) Revoke, suspend, limit or otherwise restrict the certification.

(4) Require the person to take refresher educational courses.

(5) Impose a civil money penalty not exceeding $1,000 for each incident in which the EMS provider engages in conduct that constitutes a basis for discipline.

(6) Stay enforcement of any suspension, revocation or other discipline and place the individual on probation with the right to vacate the probationary order for noncompliance.

35 Pa. C.S. §8121(b). With this background, we turn to Piotrowski's issues on appeal.

## Analysis

### I. Adjudication's Interpretation of "Reckless"

The Bureau charged Piotrowski with operating his ambulance "in a reckless manner or while under the influence of alcohol or illegal drugs or the knowing abuse of legal drugs." 35 Pa. C.S. §8121(a)(6). Because the Bureau did not allege drug or alcohol use, the only question was whether Piotrowski operated the ambulance "in a reckless manner." *Id.*

Piotrowski argues that words, such as "reckless," that have "a precise and well-settled legal meaning must be given that meaning unless there is a clear expression of legislative intent to the contrary." Piotrowski Brief at 11 (quoting *Stanton v. Lackawanna Energy, Ltd.*, 820 A.2d 1256, 1261 (Pa. Super. 2003), *aff'd*, 886 A.2d 667 (Pa. 2005)). Black's Law Dictionary defines "reckless" as the "creation of a substantial and unjustifiable risk of harm to others and by a conscious (and sometimes deliberate) disregard for or indifference to that risk . . . . *Reckless conduct is much more than mere negligence*[.]" BLACK'S LAW DICTIONARY 1524 (11th ed. 2019) (emphasis added). The Deputy Secretary defined "reckless" as

13

"[m]arked by lack of proper caution; careless of consequence," which is synonymous with mere negligence and, therefore, erroneous. Piotrowski Brief at 12 (quoting R.R. 403a).

The Health Department responds that the Deputy Secretary was required to "give effect to the meaning of *each distinct word as chosen*." Health Department Brief at 14 (quoting *Freundt v. Department of Transportation, Bureau of Driver Licensing*, 883 A.2d 503, 506 (Pa. 2005)) (emphasis added by Health Department). It contends that "careless" is an appropriate definition of "reckless" and consistent with common usage. Further, the Vehicle Code is not a valid source because it concerns "reckless driving," 75 Pa. C.S. §3736(a), whereas the EMS Act is concerned with "operation of an emergency vehicle in a *reckless manner*." 35 Pa. C.S. §8121(a)(6) (emphasis added). By operating an emergency vehicle at 25 miles per hour above the posted speed limit, Piotrowski showed a careless disregard of the consequences, which constitutes operating a vehicle "in a reckless manner." 35 Pa. C.S. §8121(a)(6).

"The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa. C.S. §1921(a). In construing a statute, courts must attempt to give meaning to every word in a statute "as we cannot assume that the legislature intended any words to be mere surplusage." *Holland v. Marcy*, 883 A.2d 449, 456 (Pa. 2005). As a corollary, it is often noted that "although one is admonished to listen attentively to what a statute says[,] one must also listen attentively to what it does not say." *Thompson v. Thompson*, 223 A.3d 1272, 1277 (Pa. 2020).

14

As the parties acknowledge, the word "reckless" is not defined in the EMS Act, which allows courts to consider dictionary sources. *St. Ignatius Nursing Home v. Department of Public Welfare*, 918 A.2d 838, 845 (Pa. Cmwlth. 2007) (courts may use the dictionary to ascertain the common and approved usage of a word). One source defines "reckless" as follows:

> **1 a :** lacking in caution **:** deliberately courting danger **:** FOOLHARDY, RASH[] **b :** CARELESS, NEGLECTFUL, THOUGHTLESS – often use with *of* [] **2 a :** marked by a lack of caution **:** HEEDLESS, RASH[] **b :** marked by a lack of foresight or consideration **:** IMPROVIDENT, NEGLIGENT[] **c :** irresponsible, wild []."

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1896 (2002) (emphasis in original). As noted above, Black's Law Dictionary defines "reckless" as

> [c]haracterized by the creation of a substantial and unjustifiable risk of harm to others and by a *conscious (and sometimes deliberate) disregard for or indifference to that risk*; *heedless*; *rash*. ● *Reckless conduct is much more than mere negligence*: it is a gross deviation from what a reasonable person would do.

BLACK'S LAW DICTIONARY 1524 (11th ed. 2019) (emphasis added).[9] Both sources use the terms "heedless" and "rash" as synonyms of "reckless." Both sources recite that "reckless" conduct involves intention. Webster's describes reckless conduct as "deliberately courting danger," and Black's states that reckless conduct shows a "deliberate disregard for or indifference to" the risk of harm to others.

The Restatement (Second) of Torts confirms the element of intent that is present in recklessness:

---

[9] Precedent has established that the meaning of undefined terms in the EMS Act may be construed in accordance with Black's Law Dictionary. *Sklar v. Department of Health*, 798 A.2d 268, 276 (Pa. Cmwlth. 2002) (courts look "for the meaning of a statute's word in that statute's definitions, then in the Statutory Construction Act [of 1972, 1 Pa. C.S. §§1501-1991], a law dictionary[,] and, finally, a standard dictionary, in that order").

> The actor's conduct is in reckless disregard of the safety of another if he does an act or *intentionally fails to do an act which* it is his duty to the other to do, *knowing* or having reason to know of facts which would lead a reasonable man to realize, not only *that his conduct creates an unreasonable risk of physical harm* to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

Restatement (Second) of Torts §500 (Am. Law Inst. 1965) (emphasis added). The Comment to Section 500 of the Restatement (Second) of Torts notes that reckless conduct is more than negligent conduct. "It must not only be unreasonable, but it must involve a risk of harm to others substantially in excess of that necessary to make the conduct negligent." *Id*., cmt. (a).

We hold that for a person's conduct to be "reckless," there must be "conscious" or "deliberate" indifference to the risk of causing harm to others. BLACK'S LAW DICTIONARY 1524 (11th ed. 2019). The Deputy Secretary's adjudication construed reckless as careless, which connotes absent-mindedness or negligence and overlooked the conscious or deliberate intent inherent in the word "reckless." Even the Health Department's preferred dictionary source, Webster's, recited that there is an element of intent present in "reckless" conduct. Simply, the Deputy Secretary reduced "reckless" to "negligent," and this was error.

## II. Burden of Proof in EMS Act Proceeding

In his second issue, Piotrowski argues that the Deputy Secretary erred in rejecting the hearing officer's proposed adjudication for the stated reason that it heightened the Bureau's burden of proof. Piotrowski argues that the Vehicle Code aptly defines "reckless," and the use of this language to define "reckless" in the EMS Act has no impact on the Bureau's burden of proof. Further, to the extent "reckless" is an ambiguous term, it is appropriate to look to other statutes that use the term.

*Allegheny County Sportsmen's League v. Rendell*, 860 A.2d 10, 21 (Pa. 2004) (quoting 1 Pa. C.S. §1921(c)(5)).

The Health Department responds that the definition of "reckless driving" in the Vehicle Code is irrelevant to the meaning of "reckless manner" in the EMS Act. First, "driving" does not appear in the EMS Act. Second, reckless driving is a crime, and Piotrowski was not charged with a crime. By improperly importing the concept of *mens rea* into the meaning of "reckless" in the EMS Act, the hearing officer imposed a burden of proof appropriate to criminal cases but not to an administrative disciplinary hearing. Further, as the Deputy Secretary reasoned, because the definition of "reckless" is not ambiguous, the hearing officer erred in considering the definition of "reckless" in the Vehicle Code. *See* 1 Pa. C.S. §1921(c)(5) (where statutory language is ambiguous or unclear legislative intention "may be ascertained by considering . . . other statutes upon the same or similar subjects)."

The Deputy Secretary overlooked a more relevant statutory construction principle. The Statutory Construction Act of 1972 requires that statutes that relate to the same subject shall be construed as one. 1 Pa. C.S. §1932(b) ("Statutes *in pari materia* shall be construed together, if possible, as one statute."). "Statutes are *in pari materia* when they relate to the same person or things or to the same class of persons or things." 1 Pa. C.S. §1932(a). The Pennsylvania Supreme Court has explained:

> It is a fundamental principle that all statutes *in pari materia*, relating to the same subject, shall be construed concurrently whenever possible. . . . If two statutes can be made to stand together, effect should be given both as far as possible.

17

*Nyce v. Board of Commissioners of Township of West Norriton*, 179 A. 584, 586 (Pa. 1935) (internal citations omitted).

There is no question that the Vehicle Code and the EMS Act both related to Piotrowski's actions on the day in question. Indeed, part of the Bureau Director's stated reason for instituting an enforcement action was that Piotrowski violated the Vehicle Code in not observing the posted speed limit. The two statutes can, and must be, construed together. 1 Pa. C.S. §1932(b). Therefore, the definition of "reckless driving" as "willful or wanton disregard" of the safety of others, 75 Pa. C.S. §3736, is directly relevant to "operation of an emergency vehicle in a reckless manner." 35 Pa. C.S. §8121(a)(6). There is little, if any, air between "reckless driving" and "operating a vehicle in a reckless manner," and we reject the Health Department's attempt to draw a distinction.[10]

The Health Department argues that the hearing officer's consideration of the Vehicle Code's use of "reckless" in Section 3736 required the Bureau to prove its case beyond a reasonable doubt. It did not. The hearing officer specifically stated that the Bureau's standard of proof was preponderance of the evidence. Simply, the Deputy Secretary's analysis on this point mischaracterizes the hearing officer's proposed adjudication.

---

[10] In *Bold v. Department of Transportation*, *Bureau of Driver Licensing*, 320 A.3d 1185, 1193 (Pa. 2024), our Supreme Court observed as follows:

> We labor in vain to understand how "operate," according to its common and approved usage, does not encompass and subsume both driving *and* actual physical control of the movement of the vehicle.

*Id*. (emphasis in original). Likewise, "reckless driving" cannot be distinguished from "operating a vehicle in a reckless manner."

## III. Whether Piotrowski Violated Section 8121(a)(6) of EMS Act

In his third issue, Piotrowski argues that the Deputy Secretary erred in concluding that he violated Section 8121(a)(6) of the EMS Act on July 30, 2021. The evidence showed that he drove the ambulance in excess of the posted speed limit, but it did not show that this speed in itself demonstrated a "disregard of a risk known to him or so obvious that he must be taken to have been aware of it." Piotrowski Brief at 16.

Piotrowski explains that the Pennsylvania Superior Court's decision in *Greenberg*, 885 A.2d 1025, is instructive on whether a driver acts in a reckless manner by exceeding the speed limit. In *Greenberg*, the defendant, traveling 20 miles over the speed limit, crossed over the center line, colliding with another vehicle. He appealed his conviction for reckless driving, *i.e.*, "willful or wanton disregard" for the safety of persons or property. The defendant was traveling at a speed of 55 miles per hour on a four-lane highway and lost control of his vehicle while negotiating a turn. Although he was traveling "too fast" for the roadway, the Superior Court concluded that there was no indication that the defendant's speed created a high probability of an accident. *Greenberg*, 885 A.2d at 1028.[11] Accordingly, the court reversed the conviction.

Piotrowski argues that he was on his way to an emergency, with lights and sirens activated. Multiple cars had pulled over to the side of the road to allow

---

[11] As the Superior Court has explained, "the legislature created a stratum of violations or offenses to cover driving behavior that is increasingly divorced from prudent driving behavior," with reckless driving being "situated in the 'serious traffic offenses' portion of the [Vehicle Code] along with such offenses like driving under the influence and homicide by vehicle, thereby signaling that it contemplates the most serious departures from the standard of care the [Vehicle Code] imparts upon operators." *Greenberg*, 885 A.2d at 1027-28. Reckless requires something more than ordinary negligence but, rather, "*a gross departure from prudent driving* standards." *Id*. at 1027 (emphasis added).

the ambulance to pass, and Piotrowski reasonably expected that other drivers, including Decedent, would respond to those signals. There is no evidence that Piotrowski's excess speed made an accident a highly probable event. *Greenberg*, 885 A.2d at 1028. It was Decedent's failure to stop at a posted stop sign that caused the accident.

The Health Department responds that a reasonable person would have slowed down to the speed limit long before the point of impact. As the Deputy Secretary explained, Piotrowski should have reduced "his speed when so designated in an urban area and obey[ed] traffic laws." Health Department Brief at 26 (quoting R.R. 406a). Because Piotrowski did not reduce his speed, he operated the ambulance in a reckless manner.

It is undisputed that Piotrowski was responding to a serious emergency, and time is of the essence in a drug overdose. He had to make choices mindful of the emergency to which he had been dispatched. To protect other drivers, he activated the ambulance's sirens and lights. As he approached the Dollar General Store, Piotrowski changed the tone of the ambulance's sirens. This is not wanton and willful disregard for the safety of others but, rather, mindfulness. When Piotrowski saw a driver moving onto the highway without stopping, he immediately hit the brakes and attempted to avoid a collision. He did not veer to the right, which could have imperiled customers walking to and from their vehicles in the parking lot. These deliberate maneuvers do not demonstrate a conscious disregard or indifference to a substantial risk of harm to others, *i.e.*, recklessness.

Exceeding the speed limit alone cannot be said to be reckless. *Greenberg*, 885 A.2d at 1027. However, the only evidence presented by the Bureau was that Piotrowski exceeded the speed limit. Piotrowski's actions demonstrated

20

care for, not wanton disregard of, the safety of others, including the victim of the drug overdose. For these reasons, the Bureau did not establish that Piotrowski violated Section 8121(a)(6) of the EMS Act.

**Conclusion**

To establish a violation of Section 8121(a)(6) of the EMS Act, 35 Pa. C.S. §8121(a)(6), the Bureau was required to prove, by a preponderance of the evidence, that Piotrowski operated "an emergency vehicle in a reckless manner." Because "reckless" is not defined in the EMS Act, it must be construed "according to the rules of grammar and according to their common and approved usage[.]" 1 Pa. C.S. §1903(a). Both the legal dictionary and common use dictionary define "reckless" as conduct involving intention that exceeds negligence. Further, where statutes are *in pari materia*, they shall be construed together. *See* 1 Pa. C.S. §1932(b). Accordingly, the definition of "reckless driving" as "willful or wanton disregard" of the safety of others, 75 Pa. C.S. §3736, is directly relevant to the meaning of "operation of an emergency vehicle in a reckless manner." 35 Pa. C.S. §8121(a)(6).

The Bureau proved that Piotrowski was driving well above the posted speed limit 16 seconds, or approximately one quarter mile, before the point of impact. Exceeding the speed limit alone is not operating "an emergency vehicle in a reckless manner," 35 Pa. C.S. §8121(a)(6), particularly where, as here, Piotrowski's other actions demonstrated care for, and mindfulness of, the safety of others.[12]

---

[12] There may be cases where the rate of speed would constitute recklessness. For example, driving an ambulance over the speed limit with the lights and sirens activated in order to get to a party, as opposed to a dispatched emergency, may violate Section 8121(a)(6) of the EMS Act. Further, an accident, or lack thereof, is not required to prove, or disprove, recklessness.

For these reasons, the adjudication of the Health Department is reversed.

_____
MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Steve E. Piotrowski,     :
      Petitioner :
           :
    v.       :  No. 1232 C.D. 2023
           :
Department of Health,    :
      Respondent :

# **O R D E R**

AND NOW, this 24th day of October, 2024, the adjudication of the Department of Health, dated October 12, 2023, in the above-captioned matter, is REVERSED.

_____
MARY HANNAH LEAVITT, President Judge Emerita